1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY LINDSAY, | Case No. CV 14-09719 AB (ASx) |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| JACK SAADIAN, in his individual and representative capacity as trustee of the Jack Saadian 2007 Trust,; and ARMANDI BABY LAND, INC., a California Corporation, | |
| Defendants. | |

Shirley Lindsay ("Plaintiff") brought this action against Jack Saadian, in his individual and representative capacity as trustee of the Jack Saadian 2007 Trust, and Armandi Baby Land, Inc. ("Defendants"), for alleged violations of the Americans with Disabilities Act, the Unruh Civil Rights Act, and California Disabled Persons Act, and for negligence, at the Payless Mattress Store ("Store") they own and/or operate in Canoga Park, California. *See* Compl. Plaintiff alleges that the disabled parking space at the Store is noncompliant, and that the ramp to the Store's entrance lacks handrails, both of which constitute unlawful barriers to access.

Plaintiff now moves for summary judgment on her ADA claim and on her

Unruh Civil Rights Act claim.  (Dkt. No. 27.)   Neither Armandi Baby Land, Inc., nor

Jack Saadian[1] filed an opposition.  The court previously found the motion appropriate

for resolution without oral argument, vacated oral argument, and took the motion

under submission.  For the following reasons, the Court **GRANTS** the motion,

## I.    LEGAL STANDARD

A motion for summary judgment must be granted when "the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247–48 (1986).  The moving party bears the initial burden of identifying the elements

of the claim or defense and evidence that it believes demonstrates the absence of an

issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the

nonmoving party will have the burden of proof at trial, the movant can prevail merely

by pointing out that there is an absence of evidence to support the nonmoving party's

case.  *Id*.  The nonmoving party then "must set forth specific facts showing that there

is a genuine issue for trial."  *Anderson*, 477 U.S. at 248.

"Where the record taken as a whole could not lead a rational trier of fact to find

for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at

587.  The Court must draw all reasonable inferences in the nonmoving party's favor.

*In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson,*

477 U.S. at 255).  Nevertheless, inferences are not drawn out of thin air, and it is the

nonmoving party's obligation to produce a factual predicate from which the inference

may be drawn.  *Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1244–45 (E.D.

Cal. 1985), *aff'd,* 810 F.2d 898 (9th Cir. 1987).  "[M]ere disagreement or the bald

---

[1] Armandi Baby Land is represented by counsel.  Saadian filed his answer pro se, and
no counsel made an appearance for him, but the court notes that Saadian's discovery
responses were prepared by counsel – the same firm that represents Armandi Baby
Land.  *See, e.g.*, Saadian Rog. Response No. 1 (Dkt. No. 27-12).

assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

## II.    UNDISPUTED FACTS

Under Fed. R. Civ. P. 56(e), "[if] a party . . . fails to properly address another party's assertion of fact . . . the court may . . . (2) consider the fact undisputed for purposes of the motion, [or] (3) grant summary judgment if the supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. Proc. 56(e).  Similarly, Local Rule 56-3 provides that "[in] determining any motion for summary judgment . . . , the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion."  Local Rule 56-3.

With these standard in mind, and having reviewed Plaintiff's motion and all spportng materials and evidence, the court finds that the following facts are not genuinely disputed:

1.    Plaintiff suffers from arthritis (osteoarthritis of multiple joints; spinal stenosis of the lumbar spine; and essential hypertension) of her hands, knees, and hips.

2.    Plaintiff alternates using a cane and wheelchair for mobility and uses a wheelchair for mobility during arthritic flare-ups.

3.    Plaintiff has a Disabled Person Parking Placard issued by the state of California.

4.    Plaintiff regularly drives a specially equipped van with a ramp that deploys out of the passenger side of the van.

5.    The Payless Mattress store is located at 7134 Topanga Canyon Blvd., Canoga Park, California ("Store").

6.    The Store is a business establishment and place of public accommodation.

7.    Defendant Jack Saadian is the owner and Defendant Armandi Baby Land, Inc. the operator/lessee of the Store, and were in July, 2014.

8.   Parking spaces are one of the facilities, privileges, and advantages offered by the Defendants to the customers of the Store.

9.   On July 27, 2014("Date of Incident"), Plaintiff went to the Store to purchase a mattress and pillows.

10.   On the Date of Incident, Plaintiff was relying on a wheelchair for mobility.

11.   The Store provided several parking spaces for its customers, one of which appeared to have been designated for use by persons with disabilities. ("Disabled Space").

12.   The paint designating the Disabled Space was very faded and the worn out.

13.   There was no signage indicating that it was reserved for persons with disabilities.

14.   There was no fine warning anywhere near the Disabled Space.

15.   The Disabled Space had a parking stall that measured 8 feet in width.

16.   There was no access aisle or hatch-marked area adjacent to the parking stall of the Disabled Space.

17.   The Disabled Space was installed in front of a pole that created an obstruction for any person attempting to park a vehicle in the Disabled Space.

18.   When Plaintiff tried to park her vehicle in the Disabled Space, the pole created an obstruction so there was not adequate space to navigate her vehicle in the Disabled Space.

19.   Plaintiff was unable to park her vehicle in the Disabled Space because of the obstruction created by the pole and the lack of a clearly delineated and demarcated parking space with an access aisle.

20.   Plaintiff needs "van accessible" parking with a wider access aisle to safely deploy her ramp and exit her van.

21.   Even if Plaintiff had been able to park in the Disabled Space, she would not have been able to exit her vehicle without being forced into the adjacent parking space because the Disabled Space lacked an access aisle.

22.   The path of travel leading to the entrance of the Store had steps with a 6-foot long

4.

1        ramp alongside for wheelchair users.

2   23.  The ramp did not have handrails on either side.

3   24.  The slope of the ramp measured 10.3%.

4   25.  Plaintiff needs handrails on both sides of ramps, especially long ramps, for

5        support in order to not lose control of her wheelchair and fall back.

6   26.  Because of the lack of van-accessible parking, Plaintiff was forced to leave  and

7        was deterred from patronizing the Store.

8   27.  Plaintiff was very frustrated because she wanted to buy a mattress and pillows

9        from the Store, but had to leave because of the parking. This caused her difficulty,

10       discomfort, and frustration.

11  28.  Several times thereafter, Plaintiff was in the area and wanted to patronize the

12       Store, but lack of van-accessible parking deterred her.

13  29.  Sometime after to Date of Incident, the Defendants restriped the parking lot of the

14       Store and installed a new disabled parking space.

15  30.  Defendants also installed handrails on both sides of the ramp to the entrance of the

16       Store.

17  31.  Plaintiff lives in Los Angeles and frequents the area where the Store is located.

18  32.  The Store is a convenient place for Plaintiff to purchase mattresses, pillows, etc.

19  33.  Plaintiff would like the ability to safely and independently park and shop at the

20       Store.

## III.   DISCUSSION

21

22       Plaintiff seeks judgment on her claims under the Americans with Disabilities

23  Act and the Unruh Civil Rights Act .  Plaintiff claims that the Store's handicapped

24  parking space and the ramp leading to the Store entrance were not compliant and as a

25  result, she faced barriers to access.  Plaintiff seeks injunctive relief and $4,000 in

26  statutory damages.

27  **A. Plaintiff is Entitled to Judgment on her ADA Claim.**

28       Title III of the Americans With Disabilities Act of 1990 ("Title III" or "ADA")

provides that  "[n]o individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

To succeed on a Title III claim, "a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).  "The third element—whether plaintiffs were denied public accommodations on the basis of disability—is met if there was a violation of applicable accessibility standards." *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 847 (N.D. Cal. 2011).  This is because discrimination is defined as either a failure to ensure that alterations are "readily accessible to and useable by persons with disabilities" or, where there are no alterations, "a failure to remove architectural barriers. . .in existing facilities. . .where such removal is readily achievable." 42 U.S.C. §§ 12183(a)(2), 12182(b)(2)(A)(iv).

Thus, Plantiff must prove these elements to establish her Title III claim:

1. Plaintiff was disabled. 42 U.S.C. § 12182(a);

2. the Defendants' facility must be a place of  "public accommodation" and, therefore, governed by Title III of the ADA;

3. the Defendants must be responsible parties, i.e., owners, operators, lessors or lessees of the facility;

4. the Defendants' facility must have either undergone an alteration that did not comply with the access standards, or contain an easily removed barrier that the Defendants failed to remove, 42 U.S.C. §§ 12183(a)(2), 12182(b)(2)(A)(iv); and

5. Plaintiff must have actually encountered this non-removed and unlawful

barrier.

The undisputed facts establish all of these elements.

**1.  Plaintiff is "Disabled," the Store is a Public Accommodation, and Defendants are Responsbile Parties**.

First, Plaintiff  is "disabled."  Under the ADA, a person is disabled if she has "a physical. . . impairment that substantially limits one or more [of her] major life activities." *See* 42 U.S.C. § 12102(1)(A) (defining "disability").  Here, Plaintiff has several different kinds of arthtitis in her hands, knees, and hips; uses a cane and wheelchar for mobility; and has a disabled person parking placard issued by the State of California. *See* Facts 1-3.  Plaintiff therefore has a physical impairment that substantially limits the life activities of walking.  Plaintiff is therefore disabled.

Second, as a retail store, the Store is a place of public accommodation, a fact Defendants admit.  *See* 42 U.S.C. § 12181(7)(E) (espressly identifying retail stores as places of public accommodation); *see* also Fact 6.

Third, the Defendants are the responsible parties: they own and/or operate this place of public accommodation, *see* Fact 7, so they have an obligation to comply with Title III.

**2.  The Store had Two Easily-Removed Access Barriers.**

Fourth, the Store had two easily-removed access barriers.  The ADA defines "discrimination" as a failure to remove architectural barriers where doing so is readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv). The term "barrier" is not defined in the Act itself but is defined in the Technical Assistance Manual:

III-4.4100: What is an architectural barrier? Architectural barriers are physical elements of a facility that impede access by people with disabilities. These barriers include more than obvious impediments such as steps and curbs that prevent access by people who use wheelchairs.

Department of Justice, Technical Assistance Manual on the American with

1   Disabilities Act (BNA) §§ III-4.4100 (1991).

2    Case law is more specific.  "To determine if Plaintiff describes an 'architectural

3   barrier' the Court must turn to the ADA Accessibility Guidelines for Buildings and

4   Facilities ('ADAAG').  If an element does not meet or exceed ADAAG standards, it is

5   considered a barrier to access."  *Rush v. Denco Enterprises, Inc.*, 857 F. Supp. 2d 969,

6   973 (C.D. Cal. 2012) (internal citations omitted).  "Any element in a facility that does

7   not meet or exceed the requirements set forth in the ADAAG is a barrier to access."

8   *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (identifying

9   this as the formal position of the Department of Justice).  These are "objective" and

10   "precise" standards and "the difference between compliance and noncompliance" is

11   "often a matter of inches."  *Id.*

12    **a.  Defendants Failed to Provide Compliant Handicapped Parking.**

13    Under the 1991 Standards, any business that provides parking spaces must

14   provide parking spaces marked as reserved for persons with disabilities. 1991

15   Standards § 4.1.2(5)1.  One in every eight of those accessible parking spaces, but not

16   less than one, must be a "van" accessible parking space, i.e., having an eight foot (96

17   inch wide) access aisle. 1991 Standards § 4.1.2(5)(b).  Under the 2010 Standards, one

18   in every six of those accessible parking spaces, but not less than one, must be "van"

19   accessible, i.e., having an eight foot access aisle, or alternatively, having a stall

20   measuring 132 inches in width with a 60 inch adjacent access aisle.  2010 Standards §

21   502.2.2.

22    Handicapped parking spaces must also be marked with signage and paint.

23   "Accessible parking spaces shall be designated as reserved by a sign showing the

24   symbol of accessibility.  [Van-accessible spaces] shall have an additional sign 'Van-

25   Accessible' mounted below the symbol of accessibility. Such signs shall be located so

26   they cannot be obscured by a vehicle parked in the space."  ADAAG § 4.6.4.  All

27   accessible parking spaces must be outlined in blue and display the international

28   symbol of accessibility.  California Building Code ("CBC") § 1129B4; ADAAG §§

4.1.2(7)(a), 4.30.7.  Under the ADA, State or local laws or regulations establish the method and color of these markings.  *See* 36 C.F.R., Part 1191, § 502.3.3.  The CBC requires parking spaces for persons with disabilities to be identified with a reflectorized sign permanently posted adjacent to and visible from each stall or space.  CBC § 1129B.4.  The sign must consist of the International Symbol of Accessibility in white on a blue background, cannot be smaller than 70 square inches, must be mounted so that there is a minimum of 80 inches from the bottom of the sign to the parking space, and posted so that it cannot be obscured by a vehicle parking in the space.  *Id.*  An additional sign or additional language below the symbol of accessibility must state "Minimum Fine $250" to ensure that the space remains available for persons with disabilities, and another sign must be posted in a conspicuous place at the entrance to the parking lot or immediately adjacent to each handicap parking space, with lettering 1 inch in height, that clearly and conspicuously warns that unauthorized vehicles parking in the handicap parking spaces can be towed at the owner's expense.  *Id.*  "The words "NO PARKING" shall be painted on the ground within each 8-foot… loading and unloading access aisle. This notice shall be painted in white letters no less than 12 inches… high and located so that it is visible to traffic enforcement officials."  CBC § 1129B3.

Here, when Plaintiff attempted to park on July 27, 2014, the paint desingting the Disabled Space was faded, and the space lacked an access aisle, lacked proper signage, and fine warning. *See* Facts 12-16.  Furthermore, the Disabled Space was in front of a pole which created an obstruction for any person attempting to park in the Disabled Space.  *See* Facts 17-19.  The handicapped parking space in Defendants' parking lot did not satisfy any of the required standards, so Defendants in effect did not provide handicapped parking.  This constitutes a barrier to access.

### b. The Absence of Handrails Along the Ramp to the Store's Entrance Was an Access Barrier.

There are also standards establishing the requirements for an accessible ramp,

1 | like the one leading up to the Store's entrance.  If a ramp run has a rise greater than 6

2 | inches or a horizontal projection greater than 6 feet, then it must have handrails on

3 | both sides. 1991 Standards § 4.8.5; 2010 Standards § 405.8. Additionally, ramps must

4 | have a level landing at both the bottom and top of the ramp. 1991 Standards § 4.8.4.

5 |      Here, although the Store had a 6-foot long ramp at the entrance, it did not have

6 | handrails on either side.  *See* Facts 22-23.  This constitutes a barrier to access.

7 | **c. Defendants Could Readily Remove the Barriers to Access.**

8 |      The removal of the barriers was readily achievable.  The Code of Federal

9 | Regulations identifies providing accessible parking and an accessible ramp as likely to

10 | be readily achievable. 28 C.F.R. § 36.304(b)(1),(18).  And, since Plaintiff filed this

11 | lawsuit, Defendants have in fact installed a new van-accessible parking space and

12 | handrails on both the sides of the ramp to the Store's entrance. *See* Facts 29, 30, 34;

13 | *see also* Saadian Resp. to ROG 6, 7 and photos submitted therewith, showing new

14 | parking space and handrails (Dkt. No. 27-14).  Where an access barrier has in fact

15 | been removed, the question of whether doing so is readily achievable has been

16 | definitively answered.  *See Wilson v. Pier 1 Imports (US), Inc.*, 439 F.Supp.2d 1054,

17 | 1069 (E.D. Cal. 2006) ("Given that the barrier has already been cured, the court must

18 | find that it was readily achievable, and thus that it violated the ADA and subsequently

19 | the Unruh Act.").

20 |      The ADA not only requires that businesses provide accessible facilities, but

21 | they have an ongoing duty to ensure that those accessible features remain ready to be

22 | used by persons with disabilities: "A public accommodation shall maintain in operable

23 | working condition those features of facilities and equipment that are required to be

24 | readily achievable to and usable by persons with disabilities . . .." 28 C.F.R. §

25 | 36.211(a).  "A violation of the ADA can occur where a defendant's business is in

26 | compliance with ADAAG requirements, but that defendant does not maintain its

27 | compliant features in a useable manner." *Kohler v. Flava Enterprises, Inc.*, 826 F.

28 | Supp. 2d 1221, 1227-28 (S.D. Cal. 2011).  Thus, a handicapped parking space is not

1   sufficient if it is faded and difficult to see.  Accordingly, Defendants failed to remove

2   barriers that were readily removed and, therefore, violated the Plaintiff's rights under

3   the ADA.

4          **3.  Plaintiff Actually Encountered the Unlawful Access Barrier.**

5          The undisputed facts establish that Plaintiff encountered an access barrier when

6   she attempted to patronize the Store in July 2014: she was unable to park her vehicle

7   in the Disabled Space because of the obstruction created by the pole, and because the

8   space was not clearly delineated by paint and lacked an access aisle.  *See* Facts 19-21.

9   Plaintiff therefore had to leave.  *See* Fact 26.  Plantiff also states that she wished to

10  patronize the Store again but was deterred because of the lack of van-accessible

11  parking.  *See* Fact 28, 32-33.

12         The undisputed facts therefore establish all of the elements of a Title III claim.

13  **B. Plaintiff is Entitled to Judgment on her Unruh Civil Rights Act Claim.**

14         The Unruh Civil Rights Act provides that "a violation of the right of any

15  individual under the Americans with Disabilities Act of 1990 shall also constitute a

16  violation of this section."  Cal. Civ. Code § 51 (f).  "A violation of the ADA is, by

17  statutory definition, a violation of [] the Unruh Act . . ."  *Cullen v. Netflix, Inc.*, 880

18  F.Supp.2d 1017, 1023 (N.D. Cal. 2012).  "Because the Unruh Act is coextensive with

19  the ADA and allows for monetary damages, litigants in federal court in California

20  often pair state Unruh Act claims with federal ADA claims." *Molski v. M.J. Cable,*

21  *Inc.*, 481 F.3d 724, 731 (9th Cir. 2007).  Beause the Defendants violated the ADA,

22  they also violated the Unruh Civil Rights Act and Plaintiff is entitled to judgment on

23  this claim.

24  **C. Plaintiff is Entitled to Statutory Damages.**

25         Plaintiff seeks both injunctive relief and statutory damages.

26         Under the ADA, a plaintiff may be entitled to injunctive relief. 42 U.S.C. §

27  12188(a).  Such injunctive relief "shall include an order to alter facilities to make such

28  facilities readily accessible to and useable by individuals with disabilities" to the

1    extent required by the ADA.  *Id.* at 12188(a)(2).  Here, it is undisputed that

2    Defendants remedied the access barriers Plaintiff complained of.  Plaintiff's request

3    for injunctive relief is therefore moot and is denied on that basis.

4           A plaintiff can recover statutory damages for a violation of the Unruh Civil

5    Rights Act "if the violation denied the plaintiff full and equal access to the place of

6    public accommodation on a particular occasion."  Cal. Civ. Code § 55.56(a).  A

7    plaintiff is entitled to recover for "each offense," Cal. Civ. Code § 52(a), defined as

8    "each particular occasion that the plaintiff was denied full and equal access . . .", Cal.

9    Civ. Code § 55.56(e), and for both actual encounters and occasions where personal

10   knowledge of a barrier deterred the plaintiff from attempting patronage.  Cal. Civ.

11   Code § 55.56(b).  A denial of full and equal access takes place where a plaintiff

12   "personally encountered" the violation and it resulted in "difficulty, discomfort or

13   embarrassment."  Cal. Civ. Code § 55.56(b).  "The litigant need not prove she

14   suffered actual damages to recover the independent statutory damages of $4,000."

15   *Molski*, 481 F.3d at 731.

16          Here, Plaintiff only seeks one penalty.  This remedy is warranted by the

17   undisputed facts that Plaintiff personally encountered the access standards violations

18   on her July 27, 2014 visit to the Store and experienced difficulty, frustration, and

19   discomfort.  *See* Fact 27.  Plaintiff was also deterred from patronizing the store several

20   times thereafter. *See*  Fact 28.  Plaintiff is therefore entitled to statutory damages of

21   $4,000 under the Unruh Civil Rights Act.

22   *//*

23   *//*

24   *//*

25

26

27

28

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff has established that she is entitled to judgment on her claims under Title III of the Americans with Disabilities Act, and under the Unruh Civil Rights Act.  The Court therefore **GRANTS** Plantiff's Motion for Summary Judgment.

The Court **DENIES AS MOOT** Plaintiffs' request for injunctive relief, but **GRANTS** Plaintiff's request for statutory damages under the Unruh Act in the amount of $4,000.

Plaintiff is **ORDERED** to file a Proposed Judgment within 14 days of this order.

Dated:  February 19, 2016      _____

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE